K<small>ATZ</small>M<small>ELINGER</small>
280 M<small>ADISON</small> A<small>VENUE</small>, S<small>UITE</small> 600
N<small>EW</small> Y<small>ORK</small>, N<small>EW</small> Y<small>ORK</small> 10016
www.katzmelinger.com

| | |
|---|---:|
| Katherine Morales | t: 212.460.0047 |
| Katz Melinger PLLC | f: 212.428.6811 |
| | kymorales@katzmelinger.com |

November 15, 2019

**<u>Via ECF</u>**
Honorable Edgardo Ramos
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

  Re: *Jeffrey Jordan v. Krasdale Foods, Inc.*
     <u>Civil Action No. 18-cv-11477-ER</u>

Dear Judge Ramos:

  We are attorneys for the parties in this matter, and we write jointly to seek approval of the parties' agreement to settle plaintiff's claims, which include claims for unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and the New York Labor Law ("NYLL"); as well as claims for failure to timely pay wages and failure to provide wage statements and payroll notices pursuant to the NYLL. The parties write to respectfully request that the Court approve the settlement agreement, a copy of which is attached hereto as **Exhibit 1**, and allow the parties to discontinue the matter with prejudice pursuant to Fed. R. Civ. P. 41 (a)(2).

  As the Court is aware, on October 23, 2019, the parties attended a pre-motion conference before Your Honor regarding Plaintiff's application for a motion to compel the enforcement of the alleged agreement to settle this matter for $100,000.00 as well as to obtain the Court's approval of the same. Dkt. No. 15. At the pre-motion conference, Plaintiff was granted leave to file a motion to approve the settlement agreement and compel enforcement of the same (the "Potential Motion to Compel"). The parties request that the scheduling order for the briefing of the Potential Motion to Compel dated October 23, 2019 be adjourned *sine die* pending a determination of this application.

  1. <u>Background</u>

  This matter arises out of Jeffrey Jordan's ("Jordan" or "Plaintiff") employment with Krasdale Foods, Inc. ("Krasdale" or "Defendant").

On December 10, 2018, Plaintiff filed a putative collective action complaint against Defendant, asserting claims for unpaid overtime wages pursuant to the FLSA and NYLL as well as claims for failure to timely pay wages and failure to provide wage statements and payroll notices pursuant to NYLL.

On February 14, 2019, the Court referred this matter to mediation and ordered the parties to produce certain discovery in anticipation of the mediation. On June 18, 2019, the parties attended a mediation session with a Court-appointed mediator Martin Siegel. Although the parties were ultimately unable to reach an agreement at the mediation, the parties continued to explore the prospect of settlement thereafter, with the help of Mr. Siegel. On August 13, 2019, Mr. Siegel relayed Defendant's final offer of $100,000.00 to Plaintiff, and Plaintiff accepted said offer on August 14, 2019. However, soon thereafter the parties had major disagreements over the remaining terms of the settlement agreement and disagreed as to whether an enforceable agreement had been formed by the parties when Plaintiff accepted Defendant's final offer of $100,000.00.

In an effort to avoid protracted litigation and expensive motion practice, following the pre-motion conference before Your Honor, the parties once again explored the prospect of settlement and ultimately reached an agreement to resolve this action, including the Potential Motion to Compel. The parties agreed to settle this matter for the total sum of $95,000.00 (the "Settlement Agreement").[1]

As explained in further detail below, the parties respectfully aver that the parties' proposed Settlement Agreement is fair, reasonable, and equitable.

2. Plaintiff's Wage and Hour Claims

Plaintiff alleged that he was employed by Defendant as a warehouse supervisor from in or around 2008 until on or around August 14, 2018. Plaintiff alleges that his duties as warehouse supervisor included, *inter alia*, opening and closing Defendant's warehouse at the start and end of his workday; collecting payments from Defendant's truck drivers; operating a forklift; overseeing the work of union laborers; loading and unloading trucks; and sweeping, power hosing, and mopping Defendant's warehouse. Plaintiff also claimed that throughout his employment, he reported to Defendant's warehouse manager and that he did not have the authority to hire, fire, or discipline employees, nor was his recommendation requested or considered in hiring, firing, or disciplining employees. Based on his duties as a warehouse supervisor, Plaintiff alleged that he

---

[1] Since the Settlement Agreement is less than the amount in the potential agreement at issue in the Potential Motion to Compel the parties wanted to advise the Court that to avoid protracted litigation and motion practice a second agreement was agreed to by the parties. (the "Second Agreement"). The Second Agreement does not affect any of the claims asserted by Plaintiff in this matter nor is it contingent upon the Court's approval of the parties' Settlement Agreement in this matter and as such the parties do not believe it falls under the purview of *Cheeks*. Should the Court deny approval of the Settlement Agreement, there will be no effect on the Second Agreement. Although the parties have not submitted a copy of the Second Agreement, nor do they believe it is necessary for the Court to review, in an effort to provide as much transparency as possible, the parties are prepared to submit the Second Agreement to the Court for an in camera review should Your Honor deem it necessary.

Case 1:18-cv-11477-ER   Document 21   Filed 11/15/19   Page 3 of 8

Hon. Edgardo Ramos
November 15, 2019
Page 3

was a non-exempt employee pursuant to the FLSA and NYLL, entitled to overtime wages for all hours worked in excess of forty (40) per week.

Plaintiff alleged that he worked approximately 52.75 hours per week from in or around August 2012 to in or around August 2016; 43.75 hours per week from in or around September 2016 until in or around July 2017; and 59.75 hours per week from in or around August 2017 until in or around August 2018. Although Plaintiff alleged that he regularly worked more than forty (40) hours per week, Defendant failed to compensate him with the requisite overtime wages. Specifically, Plaintiff alleged that Defendant compensated him with a fixed annual salary, which ranged from $51,000.00 per year to $58,093.00 per year, regardless of the number of hours that Plaintiff worked per week. Plaintiff also alleged that Defendant failed to provide him with the requisite payroll notices and wage statements as required by NYLL §§ 195(1) and (3), respectively.

### 3. The Defenses Asserted by Defendant

Defendant believes that Plaintiff's claims in this matter are without merit, and that, as an exempt employee under state and federal law, Plaintiff has no entitlement to overtime pay in the first place. In addition, the Company disputes the number of overtime hours that Mr. Jordan claims to have worked. First, all of Krasdale's warehouse supervisors are exempt under the FLSA's executive exemption because they customarily and regularly direct the work of approximately 8 to 14 employees and have the authority to, and do in fact, counsel and discipline their direct reports, evaluate their performance, consistently appraise employees' productivity and efficiency, enter information into computer programs which are accessible only by managerial-level employees, distribute assignments to each employee, inform Krasdale's payroll department if and when employees work overtime so that they are properly compensated, enforce Krasdale policies, and ensure safe working conditions.  Second, all warehouse supervisors, including Plaintiff, also qualify for the administrative exemption under the FLSA because their primary duty is the management of the warehouse, which requires the exercise of discretion and independent judgment with respect to matters of significance.  As a warehouse supervisor, Mr. Jordan was responsible for regularly submitting assignment reports (wherein he would assign the tasks described above to each of his direct reports), submitting Employee Incident Reports, disciplining the employees he supervised when necessary, informing Krasdale's payroll department of any overtime hours worked by these employees, escalating issues to Krasdale management when appropriate, and enforcing company policies and procedures.  Mr. Jordan was also responsible for utilizing a number of computer programs, many of which could be accessed only by supervisory-level personnel.  Mr. Jordan was responsible for using one such program to enter information indicating which assignments he allocated to each employee for that shift, which forklift-specific tasks he expected the employees to prioritize on that shift, and whether any attendance or productivity violations occurred during the shift.  The Company also included Mr. Jordan on its list of "authorized supervisors," meaning Mr. Jordan could be contacted by Krasdale's alarm company in case of an emergency, and Mr. Jordan was entrusted with keys to the warehouse.  For these same reasons, Plaintiff (as well as the other warehouse supervisors) is exempt from the overtime provisions of the NYLL because he qualifies for both the executive and administrative exemption of the NYLL, and was paid in excess of the then applicable minimum salary level necessary for exempt status.  Although Plaintiff appears to contend he does not qualify for the executive exemption because his duties were not supervisory in nature and involved non-exempt tasks such

as operating forklifts, loading and unloading trucks, and sweeping, power hosing, and mopping the warehouse, such work belonged exclusively to the bargaining unit employees, and if warehouse supervisors were performing bargaining unit work with any regularity or for any periods of long duration, Krasdale surely would have received numerous grievances from the union. Indeed, on the few occasions that Mr. Jordan performed bargaining unit work, the union immediately reported it to Krasdale's upper management and Mr. Jordan was reprimanded. Moreover, even if Plaintiff performed non-exempt work, it occurred so infrequently that it would not be considered their "primary duty." See 29 CFR §541.700(a) (Department of Labor ("DOL") regulations define "primary duty" as the "principal, main, major or most important duty that the employee performs"). Further, even if such work occurred frequently, the DOL regulations provide that "[t]ime alone . . . is not the sole test, and nothing in this section requires that the exempt employees spend more than 50 percent of their time performing exempt work." 29 CFR §541.700(b). Here, the warehouse supervisors' principal and most important job duty is management of the warehouse and supervision of the union employees and non-union clerks. This is an exempt position.

4. <u>The Settlement Amount Accounts for Litigation Risk and Compensates Plaintiff for Substantial Alleged Damages</u>

Based on his recollection of work hours and compensation, Plaintiff estimated that his alleged damages amounted to approximately $144,378.53 in unpaid overtime wages; $144,378.53 in liquidated damages; and $10,000.00 in wage statement and payroll notice violations, for a total of $298,757.06 in alleged damages due to Plaintiff, exclusive of interest, costs, and attorneys' fees.

However, as further discussed in Section 2 and 3 above, the parties continue to express completely opposing views as to whether Plaintiff was entitled to any overtime wages throughout his employment with Defendant. Plaintiff claims that he was a non-exempt employee pursuant to the FLSA and NYLL while Defendant alleges that Plaintiff was exempt from the overtime requirements of the FLSA and NYLL under the executive and/or administrative employee exemptions. Moreover, Plaintiff adamantly alleged that he regularly performed the manual duties of the employees he was supposed to oversee while Defendant maintained that Plaintiff's primary duties remained directing and overseeing the work of various employees. Despite the parties' opposing views on the likely outcome of this matter, the parties understand that the complex factual issues in this matter would likely require a trial, and that each party would expend significant time and costs to proceed through formal discovery and prepare for trial. Moreover, with such uncertainty on both sides, the risk to Defendant of a substantial judgment against it, the risk to Plaintiff of failing to prevail on all of his claims, and the fact that the settlement amount represents a significant portion of Plaintiff's alleged damages, the amount agreed to by the parties represents a fair and reasonable settlement at such an early stage of the litigation.

**The Proposed Settlement Should Be Approved**

1. <u>The settlement amount is fair and reasonable</u>

The parties' proposed settlement agreement warrants approval as it is fair, reasonable, and equitable. Indeed, the agreement reflects a reasonable compromise of Plaintiff's wage and hour claims rather than a mere waiver of statutory rights brought about by Defendant's overreaching.

Here, there is no doubt that the settlement did not come about because of "overreaching" by Defendant. To the contrary, Plaintiff is represented by competent counsel and the settlement amount, $95,000.00, results in a recovery to Plaintiff of $63,002.77, after expenses and proposed attorneys' fees. This sum is fair and reasonable given the early stage at which the settlement was reached; the time and costs associated with continued ligation; and the risk that Plaintiff would not prevail on all of his claims after a trial.

    2.   The settlement agreement was the result of arm's length negotiations by the parties

The proposed settlement is also the product of negotiation between parties represented by competent counsel and with the assistance of Court ordered mediation. Plaintiff and Defendant hold opposing views on the merit and value of Plaintiff's claims; however, the arm's length bargaining between the represented parties, along with the information uncovered prior to and during the mediation and the assistance of a mediator, weighs in favor of finding the settlement reasonable. Moreover, nothing in the record before the Court indicates that the proposed settlement has been achieved through fraudulent or collusive conduct. Through informal discovery, the parties have gathered and exchanged information relevant to the claims and defenses in this matter and can therefore accurately assess the strengths and weaknesses of the asserted claims and their respective positions. *See, e.g.*, *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) ("In considering whether a settlement is fair and reasonable, the principal question is whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching'") (citation and internal quotation marks omitted); *Aponte v. Comprehensive Health Mgmt., Inc.,* 2013 U.S. Dist. LEXIS 47637, at *12 (S.D.N.Y. Apr. 2, 2013) (courts typically "regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement") (citation and internal quotation marks omitted). Furthermore, since Plaintiff is no longer employed by Defendant, coercion is unlikely. *See, e.g.*, *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *Cisneros v. Schnipper Rest. LLC,* 2014 U.S. Dist. LEXIS 2111, at *2-3 (S.D.N.Y. Jan. 8, 2014) ("Although the FLSA places strict limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver, these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here") (citation and internal quotation marks omitted).

Additionally, after weighing the factors, the settlement should be allowed to proceed, as: (i) Plaintiff's alleged injuries will not recur as Plaintiff is no longer working for Defendant; (ii) Defendant strongly contests Plaintiff's allegations and estimation of damages; and (iii) continuing to develop the record will only serve to enlarge costs on both sides and will not serve any useful purpose. *Wolinsky v. Scholastic Inc*., 900 F. Supp. 2d at 335-36.

    3.   Plaintiff's counsel's fees are reasonable

Lastly, Plaintiff and his counsel maintain that the proposed amount of attorneys' fees is also fair and reasonable, as Plaintiff's counsel's own compensation does not adversely affect the extent of the relief obtained by counsel on behalf of Plaintiff. *See Wolinsky,* 900 F. Supp. 2d at 336-37; *Cisek v Natl. Surface Cleaning, Inc.*, 954 F. Supp. 110, 111 (S.D.N.Y. 1997) (finding that the sum sought by plaintiffs' counsel was reasonable, the settlement was untainted by conflict of

interest and there was "no reason to conclude that plaintiffs' counsel benefited at the expense of their clients"). Thus, the settlement does not favor Plaintiff's counsel over Plaintiff.

Under the proposed agreement, Plaintiff's counsel would recover $495.84[2] as reimbursement for costs and expenses and $31,501.39 in fees. Plaintiff's contingency fee engagement agreement provides that Plaintiff's counsel is entitled to recover, out of Plaintiff's settlement amount, fees totaling one-third of the net amount of any monies recovered on behalf of Plaintiff, after deducting costs and expenses. This fee should be approved, as "[a]n award of one third of the fund is consistent with what reasonable, paying clients pay in contingency employment cases." *Flores v. Anjost Corp.*, 2014 U.S. Dist. LEXIS 11026, at *25 (S.D.N.Y. Jan. 28, 2014); *see also Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 U.S. Dist. LEXIS 134207, at *4 (E.D.N.Y. Sept. 19, 2013) ("Pursuant to plaintiff's retainer agreement with counsel, the fee is one-third of the settlement amount, plus costs. This fee arrangement is routinely approved by courts in this Circuit."). The proposed fee award of one third should also be approved because it was consensual and agreed to by Plaintiff. *See Mireku v. Red Vision Sys., Inc.*, 2013 U.S. Dist. LEXIS 172102, at *10 (S.D.N.Y. Dec. 6, 2013) (amount of fees "is of little consequence when fees are consensual") (citation and internal quotation marks omitted).

Plaintiff's counsel has spent a total of 94.2 hours on this matter, as follows: Kenneth Katz, 18.8 hours; Nicole Grunfeld, 2.8 hours; Adam Sackowitz, .4 hours; Katherine Morales, 71.4 hours; and Nicola Ciliotta, .8 hours.[3] Plaintiff's counsel's hourly rates - $425.00, $375.00, $300.00, $275.00, and $275.00, respectively - are reasonable based on their experience and are in line with the rates charged by attorneys in this district. *See Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 437 (S.D.N.Y. 2014) ("Courts in this District have determined in recent cases that a fee ranging from $250 to $450 is appropriate for experienced litigators in wage-and-hour cases.") (internal quotation marks and citation omitted).

Mr. Katz is the sole member of Katz Melinger PLLC, a boutique firm with substantial experience representing plaintiffs in wage and hour matters. Mr. Katz earned his B.A. in 2000 from the State University of New York at Albany, and his J.D. in 2003 from Hofstra University School of Law, with an award recognizing his achievements in the employment law field. Mr. Katz was admitted to practice in the courts of New York in 2004, and has focused his practice in litigation since 2003.

Ms. Grunfeld has been the senior associate at Katz Melinger PLLC for more than five years. She earned her B.A. in 1998 from Yale University, and her J.D. in 2004 from New York University School of Law. Ms. Grunfeld was admitted to practice in the courts of New York in 2005, is an active member of the New York chapter of the National Employment Lawyers' Association, and has focused primarily on plaintiffs' employment matters for more than ten years.

Mr. Sackowitz earned his B.S. from Cornell University in 2009 and his J.D. from the University of California at Los Angeles School of Law in 2014. Mr. Sackowitz was admitted to

---

[2] The costs and expenses are as follows: $400.00 for the filing fee; $84.84 for the transcript of a court proceeding; and $11.00 for travel expenses.

[3] Plaintiff's counsel has not submitted time records along with this letter. However, Plaintiff's counsel is prepared to submit said time records upon the Court's request.

the Bars of the states of California in 2014, New York in 2015, and New Jersey in 2016, and has focused his practice on employment law for more than three years.

Ms. Morales earned her B.B.A. from Pace University in 2014 and her J.D. from Georgetown University Law Center in 2017, and was admitted to practice in New York in 2018. Prior to joining the firm, Ms. Morales worked on various employment law matters while maintaining part-time positions with private law firms, universities, and nonprofits.

Mr. Ciliotta earned his B.A. from Vanderbilt University in 2015 and his J.D. from Penn State Law School in 2018, and was admitted to practice in New York in 2019. Since joining the firm in 2018, Mr. Ciliotta has focused his practice exclusively on employment law matters.

The $31,501.39 fee sought by Plaintiff's counsel is slightly above their "lodestar" amount of $29,015.00, resulting in a multiplier of 1.09, which falls well within the range of reasonable multiplier. See e.g. *Hernandez v. Merrill Lynch & Co.,* 2013 U.S. Dist. LEXIS 42681, at \*27-28 (S.D.N.Y. Mar. 21, 2013) (approving a 3.8 multiplier and collecting cases). As set forth herein, Plaintiff's counsel negotiated a highly favorable settlement for Plaintiff, in which Plaintiff recovered a significant portion of his alleged compensatory damages, which were strongly contested by Defendant, at an extremely early stage of the lawsuit. Moreover, by reaching a settlement with Defendant, Plaintiff avoids the risks of either receiving an unfavorable outcome in this matter or, if Plaintiff prevails in his claims, attempting to enforce a judgment against Defendant. Furthermore, the agreement provides that Plaintiff will receive the entire settlement amount in one lump sum payment shortly after the Court approves the terms of the settlement agreement, which is highly favorable for Plaintiff.

Additionally, we respectfully note that Plaintiff's counsel routinely recovers awards of attorneys' fees well below its lodestar amount in similar cases that do not settle as quickly or on such favorable terms. This risk, which is inherent in cases in which counsel agrees to represent a client on a contingency basis, necessarily warrants that counsel occasionally recover attorneys' fees in excess of its lodestar amount. See e.g. *Chamoro v. 293 3rd Cafe Inc.,* 2016 U.S. Dist. LEXIS 136101, at \*12 (S.D.N.Y. Sept. 30, 2016) (approving a 1.38 multiplier of the lodestar based on "(1) the quality of the representation, (2) the magnitude of the settlement award, (3) the time and effort Plaintiffs' counsel spent litigating this action and securing settlement, and (4) the considerable risk involved with taking this case on a contingency fee basis"). This is particularly true where, such as here, Plaintiff voluntarily agrees, both at the time of settlement and at his initial engagement of counsel, to a reasonable one-third fee arrangement; and (b) there are no absent class members whose interests are impacted by the fee arrangement without their explicit consent. *See e.g., Rangel*, 2013 U.S. Dist. LEXIS at \*4 ("While attorney's fees in FLSA settlement agreements are subject to court approval for reasonableness, there is a greater range of reasonableness where, as here, the parties have settled on the fee through negotiation") (citations and internal quotation marks omitted); *see also Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1099 (2d Cir. 1977) (determining that the Court is to act as a fiduciary who must serve to protect the rights of absent class members) (citations and internal quotation marks omitted).

  Accordingly, the parties respectfully request judicial approval of the parties' proposed settlement agreement, and further request to be allowed to submit a stipulation of discontinuance with prejudice as to Plaintiff consistent with the requirements of Fed. R. Civ. P. 41(1)(a)(ii).

               Respectfully submitted,

               */s/ Katherine Morales*
               Katherine Morales, Esq.
               Katz Melinger PLLC
               280 Madison Avenue, Suite 600
               New York, New York 10016
               (212) 460-0047
               kymorales@katzmelinger.com
               *Attorneys for Plaintiff*